**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **Alexis Gainey, f/k/a Alexis Lezama,** </br></br>  Plaintiff, </br></br> v. </br></br> **Atlantic Recovery Solutions, LLC,** </br></br>  Defendant. | Case No.: </br></br> **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL PURSUANT TO:** </br></br> (1) **THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, ET SEQ.;** </br> (2) **THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ.; AND** </br> (3) **FLA. STAT. § 501.059, ET. SEQ.** </br></br> **JURY TRIAL DEMANDED** |

### INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively

1

disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses.

2. The United States Congress has recognized the need to protect the privacy of consumers and reduce public safety risks associated with receiving unwanted telemarketer and debt-collector calls. Receiving calls after a consumer has revoked consent undermines a consumer's right to privacy. As such, congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq., to protect consumers from the abusive debt-collector practices.

3. Plaintiff Alexis Gainey ("Plaintiff") brings this class action against Defendant Atlantic Recovery Solutions, LLC ("Defendant") to secure redress for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, et seq., and Fla. Stat. §§ 501.059, et. seq.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all of its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

6. All violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid these violations.

///

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this case arises from a violation of several federal laws including the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et seq. ("TCPA"), and the Federal Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA").

8. This Court has personal jurisdiction over Defendant because Defendant directed its unlawful collection attempts and unlawful voicemail transmissions at Plaintiff, a Florida resident.

9. Venue is also proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in Palm Beach County, Florida, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

10. More specifically, Defendant abusively sought to collect a debt by continuing to collect without providing validation of debt, which occurred while Plaintiff was located in Palm Beach County, Florida.

11. Further, Plaintiff resides within the State of Florida and has a Florida area code phone number to which the subject calls were made.

## PARTIES

12. Plaintiff is an individual residing in West Palm Beach, Florida, and she is, and at all times mentioned was, a "consumer" as defined by 15 U.S.C. § 1692a(3). Plaintiff is, and at all times mentioned was, a "person" as defined by 47 U.S.C. § 153(39). Additionally, Plaintiff is, and at all times

mentioned was, a "called party" as that term is defined by Fla. Stat. § 501.059(1)(a).

13. Upon information and belief, Defendant is, and at all times mentioned herein, was a debt collection agency located in Getzville, New York.

14. Upon information and belief, Defendant has a principal place of business at 33 Dodge Rd. #108, Getzville, NY 14068.

15. Defendant, in the ordinary course of business, regularly, on behalf of itself or others, engages in "debt collection". Accordingly, Defendant is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6). Additionally, Defendant is, and at all times mentioned herein was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(1)(i).

16. Defendant, at all times relevant, was "doing business in this state" as that phrase is defined by Fla. Stat. § 501.059(1)(e).

## THE TCPA

17. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ADTS"); and (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

18. The TCPA defines an "automatic telephone dialing system" (ATDS") as "equipment that has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

19. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an

automatic dialing system or prerecorded voice." Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

20. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

21. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

22. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel*.

*Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

23. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

24. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

25. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

26. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

27. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

28. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

29. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

30. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4,

2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## FACTUAL ALLEGATIONS

31. Sometime prior to July 2021, Plaintiff allegedly incurred some financial obligations owed to the original creditor, Jared Jewelers ("Jared"), (the "Debt"). Plaintiff takes no position as to whether the debt is owed. These obligations were money, property, or their equivalent, which are due or owing, or alleged to be due or owing, from a natural person to another, and were therefore "debt(s)" as defined by 15 U.S.C. § 1692a(5).

32. Sometime thereafter, but before July 2021, Plaintiff allegedly fell behind on the payments owed on the Debt.

33. Afterwards, the alleged Debt was allegedly assigned, placed, or otherwise transferred, to Defendant for collection. Thereafter, Defendant began contacting Plaintiff in attempt to collect upon the Debt.

34. In or around July 2021, Plaintiff started received phone calls and text messages from Defendant requesting that Plaintiff or Plaintiff's attorney contact Defendant regarding her "case."

35. By referring to a "case" that did not exist, Defendant misled Plaintiff in violation of 15 U.S.C. § 1692e and e(10).

36. On July 21, 2021 at approximately 11:39 am, Plaintiff received a text message from Defendant stating the following: "Alexis Lezama this text is from ARS. We need to speak to you or attorney regarding your case. Please call 667-400-7596 and refer to Case2699406."

37. Also on July 21, 2021 at approximately 4:14 pm, Plaintiff received a call from Defendant regarding a potential settlement of an account

with Jared. Plaintiff answered the call and was transferred to the "settlement manager" but when Plaintiff was transferred, the caller ended the call. Plaintiff called back and left a voicemail message at Defendant's number (716) 293-1560 (ext. 146) for representative Sarah requesting that all calls stop and that any further communication be in writing.

38. On July 28, 2021 at 12:47 pm, Plaintiff received the same text message that was received on July 21, 2021 but this text requested that Plaintiff call 727-349-0133.

39. After receiving the text message, Plaintiff called Defendant and requested again that all communications be in writing and that Plaintiff's number be removed from Defendant's call list. Surprisingly, Defendant's representative that spoke with Plaintiff told Plaintiff that Plaintiff can withdraw consent to receive calls but no matter what Plaintiff requested, the calls would continue. Defendant's representative further told Plaintiff that Plaintiff could choose to ignore the calls.

40. Despite Plaintiff's requests that all communication be in writing, Plaintiff continued to receive calls and text messages from Defendant throughout the months of July 2021, August 2021, September 2021 and October 2021.

41. Specifically, Plaintiff received voicemails from Defendant on July 30th, August 5th, August 6th, August 9th, August 17th, August 19th, August 24th, August 27th, August 30th, September 1st, September 10th, September 13th, September 14th, September 15th, September 17th, September 21st, September 22nd, September 23rd, September 24th, September 28th, September 30th, and October 11th of 2021.

42. Additionally, Plaintiff received text messages from Defendant on August 16, 2021, August 18, 2021, August 24, 2021, September 20, 2021, and September 27, 2021.

43. Each of the text messages was identical to the first text message sent on July 21, 2021, except for the number that Defendant requested Plaintiff call.

44. In summary, Plaintiff received *at least* 31 phone calls and 11 text messages from Defendant over a period of four (4) months.

45. Defendant's text messages and voicemail messages constituted debt collection because Defendant was clearly attempting to collect Plaintiff's alleged debt regarding a Jared account.

46. Plaintiff received the subject texts and voicemail messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

47. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted using an ATDS or a prerecorded voice or text. In fact, Plaintiff explicitly requested that all communications be in writing.

48. Plaintiff is the subscriber of the phone associated with the number that received the voicemails and text messages from Defendant, and is financially responsible.

49. Here, Defendant's continued communications and collection attempts were harassing and abusive.

50. The impersonal and generic nature of Defendant's text messages and voicemail messages, demonstrates that Defendant utilized an ATDS in

transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

51. Defendant's shocking unsolicited text messages and voicemail messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

52. Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. See https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

53. The above-mentioned voicemail messages and text messages were "communication(s)" pursuant to 15 U.S.C. § 1692a(2).

54. 15 U.S.C. § 1692d provides: "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

55. The repeated and continuous calls and voicemail messages left by Defendant to Plaintiff, which were intended to annoy, abuse, or harass Plaintiff violate 15 U.S.C § 1692d(5).

56. Defendant's failure to provide Plaintiff with a written notice of the alleged debt before attempting to collect on the alleged debt violated 15 U.S.C. § 1692g.

57. This matter involves a "voicemail transmission" *i.e.* a voice message directly delivered to a voicemail application, service or device. *See* Fla. Stat. § 501.059(1)(l).

58. Defendant's above-mentioned telephone calls and voicemail transmissions involved the playing of a recorded message when connection is completed to Plaintiff's Florida phone number without the prior express written consent of Plaintiff, in violation of Fla. Stat. § 501.059(8)(a).

59. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of individuals. Plaintiff also seeks statutory damages and any other available legal or equitable remedies.

60. Due to Defendant's ongoing violations of the law, Plaintiff was required to bring this action to finally resolve Plaintiff's disputes and ensure

safeguards are put in place to protect Plaintiff from future unlawful debt collection practices and harassment.

## CAUSES OF ACTION
## COUNT I
## VIOLATION OF THE TCPA
## 47 U.S.C. § 227(b)(1)(A)

61.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

62.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …" 47 U.S.C. § 227(b)(1)(A)(iii).

63.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to Plaintiff's cellular telephone.

64.     These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call Plaintiff's cell phone the calls were made.

65.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system and/or prerecorded text messages to make non-emergency telephone calls to Plaintiff's cell without her prior express written consent.

66.     Defendant knew that it did not have prior express consent to

make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system and/or prerecorded text message. The violations were therefore willful or knowing.

67. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff was harmed and is each entitled to a minimum of $500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future calls. *Id*.

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATION OF
## THE TCPA, 47 U.S.C. § 227(b)

68. Plaintiff realleges and incorporates the forgoing allegations as if fully set forth herein.

69. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

70. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that its conduct was a violation of the TCPA.

71. Because Defendant knew or should have known that Plaintiff had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(b)(3) of the TCPA.

72. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff was harmed and is entitled to a minimum of $1,500.00 in damages for each violation. Plaintiff is also entitled to an

injunction against future calls. *Id*.

## COUNT III
### VIOLATION OF Fla. Stat. §§ 501.059, et. seq.

73. Plaintiff re-alleges and incorporates the forgoing allegations as if fully set forth herein.

74. The forgoing acts and omissions constitute numerous and multiple violations of Fla. Stat. §§ 501.059, et. seq.

75. As a result of each and every violation of Fla. Stat. §§ 501.059, et. seq., Plaintiff is entitled to any actual damages pursuant to Fla. Stat. § 501.059(10)(a)(2); statutory damages for a knowing or willful violation in the amount up to $1,500 pursuant to Fla. Stat. § 501.059(10)(b); and reasonable attorney's fees and costs pursuant to Fla. Stat. § 501.059(11)(a).

## COUNT IV
### KNOWING AND/OR WILLFULL VIOLATION OF
### Fla. Stat. §§ 501.059, et. seq.

76. Plaintiff realleges and incorporates the forgoing allegations as if fully set forth herein.

77. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated Fla. Stat. §§ 501.059, et. seq.

78. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that its conduct was a violation of Fla. Stat. §§ 501.059, et. seq.

79. Because Defendant knew or should have known that Plaintiff had not given prior express consent to receive its autodialed calls, the

Court should treble the amount of statutory damages available to Plaintiff pursuant to Fla. Stat. § 501.059(10)(b).

80. As a result of Defendant's conduct and pursuant to Fla. Stat. § 501.059(10)(b), Plaintiff was harmed and is entitled to a minimum of $1,500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future calls. *Id*.

## COUNT V
## VIOLATION OF THE FDCPA
## 15 U.S.C. §§ 1692 et seq.

81. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs above.

82. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 et seq. Defendant's failure to provide Plaintiff with a written notice of the alleged debt violated 15 U.S.C. § 1692g, 1692d, 1692d(5), 1692e, and 1692e(10).

83. As a result of Defendant's violations of 15 U.S.C. §§ 1692 et seq., Plaintiff is entitled up to $1,000 in statutory damages and actual damages, in addition to reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and that Plaintiff be awarded damages from Defendant, as follows:

- An award of actual and statutory damages;

- An order declaring that Defendant's actions, as set out above, violate the TCPA, Fla. Stat. §§ 501.059, et. seq., and the FDCPA;

- A declaratory judgement that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

- A declaratory judgment that Defendant utilizes prerecorded text messages;

- An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interest of Plaintiff;

- An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining recipient's consent to receive calls made with such equipment;

- Attorney's fees and costs;

- An award of $1,000 in statutory damages to Plaintiff for each and every violation of 15 U.S.C. §§ 1692, et. seq. by Defendant, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of actual damages to Plaintiff for each and every violation of 15 U.S.C. §§ 1692 et seq. by Defendant, pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of costs of litigation and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 501.11(c);

- An award of $500 or actual damages, whichever is greater for each negligent violation pursuant to Fla. Stat. § 501.10(a);

- An award of $1,500 or actual damages, whichever is greater for each willful violation pursuant to Fla. Stat. § 501.059(10)(b);

- An award of $500 or actual damages, whichever is greater for each negligent violation of the TCPA pursuant to § 227(b)(3);

- An award of $1,500 or actual damages, whichever is greater for each willful violation of the TCPA pursuant to § 227(b)(3); and

- Any other further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

84. Pursuant to the Seventh Amendment of the Constitution of the United States of America, Plaintiff demands a trial by jury of any and all triable issues.

Dated: September 7, 2022                  Respectfully submitted,

BY: /s/ RYAN L. MCBRIDE
    RYAN L. MCBRIDE, ESQ.
    TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni (1034549)
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride (1010101)
**Kazerouni Law Group, APC**
301 E. Bethany Home Road, Suite C-195, Phoenix, AZ 85012
Telephone: (800) 400-6808 Facsimile: (800) 520-5523
ryan@kazlg.com